**STATE OF SOUTH DAKOTA**

v.

**Charles W. HALE et al.**

**Civ. No. 71–36W.**

United States District Court,
D. South Dakota, W. D.

Aug. 27, 1971.

Gordon Mydland, Atty. Gen., State of S. D., Pierre, S. D., for plaintiff.

Robert A. Warder, Rapid City, S. D., for defendants.

BOGUE, District Judge.

The facts are that the petitioners, Charles W. Hale, Steven Long and Jack B. Tisdale, are citizens of the United States and are presently restrained of their liberty by reason of a Judgment and Sentence of the Circuit Court in and for the County of Lawrence, South Dakota, rendered on October 14, 1968.

The petitioners were tried in said Circuit Court on a charge of burglary in the third degree and petty larceny, said Charles W. Hale and Steven R. Long being represented by Attorney D. O. Dillavou, Deadwood, South Dakota, and Jack B. Tisdale being represented by Attorney Robert Warder, Rapid City, South Dakota. As a result of said trial, the jury returned a verdict of guilty to charges of Count I, burglary in the third degree, and Count II, petty larceny.

Petitioners were placed on probation for a period of two years under the supervision of the South Dakota Department of Probation and Parole, to abide by all the rules and regulations set out by said department.

The petitioners were to individually seek out the owners of the cabins broken

into and arrange for restitution in money, labor, or both, for any damages done to the cabins.

Each petitioner was individually assessed costs in this matter in the amount of Two Hundred and Fifty Dollars ($250.00).

It was further ordered by the court on Count II of petty larceny that each petitioner be fined One Hundred Dollars ($100.00). That each petitioner be imprisoned in the Lawrence County Jail for a period of thirty days, such sentence to be served on weekends or vacation periods so as not to interfere with college attendance.

■ The evidence presented at the pretrial hearing was that petitioners Long and Tisdale and a friend, were stopped while driving their red 1967 Volkswagen in Spearfish Canyon by two deputy sheriffs who ordered them to proceed to the police station in Spearfish to be questioned by the sheriff. The petitioners were interrogated at that time without benefit of the full and complete Miranda warning. The sheriff testified that he did advise petitioner Long of his right to an attorney and his right to remain silent (TR 7). However, the sheriff omitted that portion of the Miranda warning which states that if defendant could not afford to hire an attorney, one would be appointed to represent the defendant before any questioning began (TR 36). The sheriff admitted that he never advised petitioner Tisdale of his constitutional rights while at Spearfish (TR 30). After petitioner Long confessed, the sheriff ordered petitioners Long and Tisdale to bring everyone else involved and everything taken to the sheriff's office in Deadwood the next day. Petitioners Long, Hale and Tisdale, arrived at the sheriff's office the following day, March 14, 1968. There the sheriff interrogated them without advising them of their constitutional rights (TR 43–46). The sheriff told the petitioners that he was going to do everything he could to help them and asked them to fill out and sign a volun-

tary statement or confession. At no time during any of this interrogation did the sheriff or any of his deputies advise the three petitioners of their constitutional rights or give the warnings required by the Constitution of the United States (TR 43).

■ The trial record shows that the sheriff gave testimony by reading directly from the written statements of the petitioners (TR 132–140). The States Attorney asked the sheriff to refer to the various petitioners' written confessions and whether there was any reference in the statements to a particular cabin (TR 132) that was broken into. The sheriff then read directly from the confession which named certain cabins and listed items stolen (TR 138). Thus the States Attorney informed the jury of information on the written statements which were inadmissible as evidence. Such use of the statements is precluded by Miranda. The prosecution may not use statements whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). The use of the written statements under the guise of "refreshed recollection" was an attempt to circumvent the necessary procedural safeguards. See United States v. Baratta, 2 Cir., 397 F.2d 215 (1968). The sheriff gave testimony by reading from a written statement or confession which was prejudicial to all petitioners. Even if the court held the confession to be voluntary, the jury still has to decide whether to accept it and what weight to give it. The jury here was not so instructed.

■■ By custodial interrogation the court meant questioning initiated by law enforcement officers after a person has been taken into custody or *otherwise deprived of his freedom of action in any significant way*. (Emphasis added.)

As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). See also Commonwealth of Pennsylvania v. Sites, 427 Pa. 486, 235 A.2d 387, 31 A. L.R.3rd 559, "What Constitutes Custodial Interrogation Within the Rule of Miranda v. State of Arizona"; Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

In Smith v. Rhay, 419 F.2d 160 (1969), the United States Court of Appeals for the Ninth Circuit held that a warning of constitutional rights which did not include mention of defendant's right to presence of an attorney and that if he could not afford one, a lawyer would be appointed to represent him prior to any questioning, was not adequate and defendant's oral confessions obtained after such warning were inadmissible in burglary trial.

■ Before prosecution may use statements of accused stemming from custodial interrogation, it must show that the accused was warned of his rights to remain silent and to retain counsel, and advised that any statements he did make could be used against him. United States v. Kucinich, 6 Cir., 404 F.2d 262, 266 (1968).

It is the opinion of this court that the petitioners in the described circumstances were deprived of their freedom of action in a significant way. They were interrogated without the benefit of the Miranda warning and it is the constitutional duty of this court to give effect to the rule of *Miranda*. This court has found no case law where the plain import of this holding has eroded.

■ The trial record further shows that the testimony of the States Attorney for Lawrence County, Ralph Hogatt, both at the preliminary hearing in May, 1968, and also again in the evidence produced before the district court on July 8, 1971, indicates an intrusion by the States Attorney by electronic means into privileged conversation between the petitioners and their counsel. The States Attorney, unbeknownst to petitioners or their counsel, taped a private conversation between petitioners and their counsel in the courtroom during the preliminary hearing (Transcript of Preliminary Hearing 549). Further, the States Attorney said that he would erase the tape recording, but he would testify himself as to what he heard.

Of paramount concern in a situation such as exists in this case, is the fact that there can be no known measure of damage caused by the incomprehensible actions of the States Attorney, but it is abundantly clear to this court that the petitioners were denied due process of law, specifically their right to effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States.

In the prosecution of a government employee for concealing documents filed with the Justice Department relating to national defense, the trial court erred in holding that the interception of telephone messages between the defendant and her counsel before and during her trial was nothing more than a serious breach of ethics since if the interception took place, the defendant's right to effective aid of counsel was violated and the verdict would have to be set aside. Coplon v. United States, 89 U.S.App.D. C. 103, 191 F.2d 749, 759 (1951).

The actions of the States Attorney in the present case are repugnant to any sense of fundamental fairness and due process. Such activity is sufficient in and of itself to require reversal of the petitioners' conviction without any showing whatsoever of prejudice.

It is the opinion of this court that the petitioners have sufficiently exhausted

their state remedies to be properly before this court and that petitioners are now being unlawfully restrained under the judgment of state court.

The petition for a writ of habeas corpus is hereby granted, and it is the opinion of this court that the said Charles W. Hale, Steven Long, and Jack B. Tisdale should remain released under the bond set by this court heretofore until they are retried or until charges are dismissed against said defendants, or until further order of this court, or until otherwise ordered by the United States Eighth Circuit Court of Appeals.

The foregoing Memorandum Decision shall constitute this court's findings of fact and conclusions of law.